ROLAND L. BELSOME, Judge.
| lAppellant, the State of Louisiana, appeals the trial court’s grant of Defendant-Appellee’s motion to quash the bill of information. For the reasons that follow, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
On August 19, 2005, the State charged defendant by Bill of Information with possession with one count of intent to distribute cocaine, a violation of La. R.S. 40:967(B). On Thursday, August 24, 2005, defendant appeared for arraignment and pled not guilty. On the following Monday, Hurricane Katrina struck. Defendant was evacuated to Hunt Correctional Center in St. Gabriel, Louisiana, from Orleans Parish Prison as a consequence of Hurricane Katrina. On December 21, 2005, Defendant was re-arraigned while at Hunt Correctional Center.
On January 12, 2006, Defendant appeared for a status conference. On January 24, 2006, a hearing on defense motions was held, and the trial court denied the motion to suppress the evidence and found probable cause. The trial court conducted a status conference on February 3, 2006, in the defendant’s absence and set the matter for trial on March 13, 2006. However, on that date, the defendant was not transported to court, and the trial was continued until April 3, 2006. On |2that date, the defendant appeared attended by counsel, and the trial court conducted a pre-trial conference.
On May 26, 2006, defense counsel appeared for a pre-trial conference; however, the defendant was not transported to court. The trial court reset the matter until July 31, 2006. The minute entry from that date indicates that defendant did not appear, and the trial court issued an alias capias and set a bond forfeiture hearing for August 18, 2006. On August 18, 2006, it was determined that defendant was actually in custody at the South Louisiana Correctional Center in Basile, Louisiana, as evidenced by the State’s filing of a motion and order for writ of habeas corpus ad prosequendum, directing officials at the center to transport the defendant for trial on September 15, 2006.[1] The minute entry from September 15, 2006 reflects that the defendant was in custody but was not transported to court for trial; the matter was re-set for September 26, *306 2006. On September 26, 2006, the minute entry reflects that defendant remained in the sheriffs custody and was not brought to court; the matter was re-set for October 10, 2006. Likewise, on October 10, 2006, the defendant was not transported to court for the scheduled pre-trial conference. The conference was re-set for November 7, 2006.
The November 7, 2006, minute entry reflects that the defendant did not appear for a pre-trial conference and that one Damien Sutton accepted service for the defendant for the pre-trial conference scheduled for November 13, 2006. The November 13, 2006, minute entry reflects that defendant failed to appear, and the trial court issued an alias capias. However, the defendant was in custody during this time.
|sThe matter next appeared on the docket on July 31, 2007 for a pre-trial conference, where the minute entry reflects he appeared with counsel. On August 2, 2007, the defendant again appeared for a pre-trial conference. On August 6, 2007, another pre-trial conference was held. At that time, the defendant filed a speedy trial motion. Defendant also filed a motion to be released from custody, which the trial court denied. Trial was set for August 16, 2007. On that date, defendant was not transported to court, and counsel for the defense requested a continuance. The trial court granted the request for a continuance, and indicated that defendant would again be placed on the jail list.[2] A pre-trial conference scheduled for August 23, 2007, was continued after the defendant was not transported to court.
On August 28, 2007, the defendant appeared for a pre-trial conference. On that date, defendant filed a motion to quash, asserting that his constitutional right to a speedy trial had been violated. On September 10, 2007, the trial court granted defendant’s motion to quash, which the State now appeals.

ASSIGNMENT OF ERROR NUMBER 1

In the sole assignment of error, the State submits that the trial court erred in granting defendant’s motion to quash because the defendant’s right to a speedy trial was not violated.
The right to a speedy trial is set forth in both the federal and state constitutions. U.S. Const. Amend. 6; La. Const. Art. I, § 16 (see also La.C.Cr.Pr. art. 701(A)). In Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101, (1972), the U.S. Supreme Court adopted a balancing test in which the conduct of the State and |4the defendant are weighed for purposes of determining whether the right to a speedy trial has been violated. Specifically, the Court articulated four separate inquiries: whether the delay between accusation and trial is uncommonly long; whether the prosecution or the defendant is more to blame for the delay; whether, in due course, the defendant asserted his right to a speedy trial; and whether he suffered prejudice as a result of the delay. Barker v. Wingo, 407 U.S. at 530, 92 S.Ct. at 2191. Of the four factors, the second has been characterized as the most pivotal. United States v. Loud Hawk, 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640.
The Court also recognized that the first inquiry, the length of the delay, is to some extent a threshold requirement, noting that until there has been some delay which has been “presumptively prejudicial,” there is nothing to trigger a speedy *307 trial analysis, and no necessity for further inquiry. Barker, supra, at 531, 92 S.Ct. at 2192. Furthermore, the length of delay must be judged relative to the peculiar circumstances of the case such as the complexity and seriousness of the crime. Id.
In Doggett v. U.S., 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the Court noted that “depending on the nature of the charges, the lower courts have generally found post-accusation delay ‘presumptively prejudicial’ at least as it approaches one year.” Id. at 652, 112 S.Ct. at 2691, n. 1 (citations omitted). In this case, from the date the Bill of Information was filed until the motion to quash was granted, approximately twenty-five months elapsed, arguably constituting a presumptively prejudicial delay.[3] Therefore, an evaluation of the remaining Barker factors is warranted.
|sTurning to the second factor, it is evident from the record that a substantial delay in Defendant’s proceedings was caused by Hurricane Katrina. This delay lasted for approximately nine months, from August 29, 2005 until June 5, 2006, and cannot rightly be attributed to the State. See State v. Hamilton, 2007-0581 (La.App. 4 Cir. 3/5/08), 980 So.2d 147 (finding that the interruption caused by Hurricane Katrina ceased on June 5, 2006, when the first jury trial after the Katrina took place); La.C.Cr.P. art. 579(2) (excluding times during which the defendant cannot be tried due to “any other cause beyond the control of the state” from the two year limitation for commencement of trials; State v. Brazile, 2006-1611 (La.App. 4 Cir. 5/30/07), 960 So.2d 333 (finding Hurricane Katrina was a cause beyond the control of the state for purposes of La.C.Cr.P. art. 579); State v. Stewart, 2007-0850 (La.App. 4 Cir. 4/9/08), 983 So.2d 166 (finding no speedy trial violation where defendant’s competency issues and Hurricane Katrina caused substantial delays).
The State also suggests that even after Criminal District Court reopened and jury trials resumed, the normal course of business was further obstructed by the lack of manpower within the Orleans Parish Criminal Sheriffs Office, which limited the *308 number of inmates that could be transported to and presented in court. The State further notes that many inmates were relocated to several different | fifacilities within the Department of Corrections across the State, which made it difficult to locate and transport inmates for court appearances. Accordingly, the State contends that it cannot be held solely to blame for the delays in bringing the defendant to trial.
A careful review of the record reflects that the process of proceeding to trial was indeed plagued by the constant and repeated inability to obtain defendant’s presence in court. Specifically, the case was continued on at least twelve occasions because the defendant was not transported to court. As previously noted, the record also reflects that the defendant was housed in the South Louisiana Correctional Center in Basile, Louisiana, for a period of time.
Furthermore, it is evident that the case was delayed by the inability to determine whether the defendant was actually in custody. The longest of these delays lasted for approximately eight months, between November 13, 2006 and July 30, 2007.[4] The minute entry from November 7, 2006, indicates that the defendant did not appear and Damien Sutton accepted service for the defendant. At the hearing on defendant’s motion to quash, the trial court noted that Damien Sutton was another defendant in Section “B” who was either related to or was friends with the defendant.[5]
When the case appeared on the docket on November 13, 2006 and the defendant did not appear, the trial court, ostensibly believing that the defendant had been released from custody, issued an alias capias. Unbeknownst to the State, the trial court, or defense counsel, however, the defendant was actually in custody, where he remained for approximately eight months until the trial court was ^notified. Certainly, the defendant should be not be apportioned any fault for these delays. As the U.S. Supreme Court noted, “the ultimate responsibility” for bringing cases to trial “must rest with the government rather than with the defendant.” Barker, 407 U.S. at 531, 92 S.Ct. at 2192. To what extent the State should be held accountable for the delays and how heavily the cause for the delays should be weighed against the State is less clear.
In this case, the lingering effects of Hurricane Katrina greatly contributed to the delays. Nevertheless, in failing to determine that the defendant was actually in custody at some point during the aforementioned eight month period and considering, to some extent, the difficulties in effecting court appearances, the State exhibited “official negligence,” as the State was neither diligent nor malicious. Dag-gett, 505 U.S. at 656, 112 S.Ct. at 2693. Although delays due to official negligence are weighed against the State more lightly than deliberate delays, they nevertheless “fall on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution.” Id. at 657,112 S.Ct. 2686.
With respect to the third factor, defendant’s assertion of his right to a speedy trial, the record reflects the defendant did not assert any speedy trial claims prior to filing his motion for speedy trial on August 6, 2007. However, defendant was effec *309 tively denied an opportunity to assert a speedy trial claim during the aforementioned eight month period. Accordingly, we find that this factor weighs in defendant’s favor, but the limited frequency and force of defendant’s objections are noted.
|sThe fourth Barker factor involves an inquiry into the degree of prejudice suffered by the defendant due to delay in prosecution. Any prejudice to the defendant must be assessed in light of his interest (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired. Barker, 407 U.S. at 532, 92 S.Ct. at 2193. The Court found that the most important consideration is whether the defendant’s defense was impaired by the delay. Id.
In Doggett, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520, the Court modified its analysis of the prejudice factor. Although “affirmative proof of particularized prejudice is not essential to every speedy trial claim,” an “excessive delay [can] presumptively eompromise[ ] the reliability of a trial in ways that neither party can prove, or for that matter, identify.” Id., 505 U.S. at 654-655, 112 S.Ct. at 2692-2693. The Court recognized, however, that the defendant’s degree of proof in each situation varies inversely with the government’s degree of culpability for the delay. Id. Accordingly, where the State demonstrates reasonable diligence in its efforts to bring the defendant to trial, the defendant must establish “specific prejudice to his defense,” no matter how great the delay. Id. Conversely, the longer the delay, the greater the presumption of prejudice. Id. at 656,112 S.Ct. 2686.
Defendant asserts that in addition to the anxiety he suffered during his period of incarceration, he has also suffered actual prejudice resulting from the destruction of evidence. Defendant contends that his ability to locate any potential witnesses is severely impaired due to the passage time. Additionally, when the defendant was apprehended, the police recovered U.S. currency from a shoe. Both the shoe and the money were lost when Criminal District Court flooded during Hurricane Katrina. Thus, defendant contends that he has lost the opportunity to |9retrieve any fingerprints from the money or the shoes, which he argues could possibly exculpate him. This Court addressed similar concerns in State v. Stewart, 2007-0850 (La.App. 4 Cir. 4/9/08), p. 9, 983 So.2d 166, 171-172:
Stewart claims prejudice because as a result of the time delay and Hurricane Katrina, evidence was lost. In particular, he notes that the audio and videotaped statements of the alleged eyewitness and the photographic lineup were lost in Hurricane Katrina. In addition, he complains that since Hurricane Katrina, the neighborhood where the incident occurred is now vacant, and he is unavailable to locate any potential defense witnesses. However, he does not state that he knows of any witnesses who observed the incident occur. Thus, his argument about potential witnesses is purely speculative. Additionally, the lost evidence does not prejudice Stewart but puts a heavier burden on the state to prove its case. The state will probably have to produce the sole eyewitness at trial to prove its case. The photographic lineup was reconstructed for the motion hearing. Detective Herman Franklin testified that he was able to reconstruct the photographic lineup by using the booking numbers of the persons used in the lineup.
Likewise, we find that defendant’s argument with regard to the lost evidence and alleged loss of potential witnesses is speculative. As in Stewart, supra, the loss of the *310 evidence arguably prejudices the State in its ability to prove its case against the defendant. Accordingly, defendant has failed to demonstrate the requisite particularized prejudice owing to the delays in bringing his case to trial.[6]
Finally, the question arises whether the period of official negligence, lasting no less than eight months nor any longer than sixteen months in this case, warrants, a finding of presumed prejudice. The length of delay in defendant’s case falls far short of the six years found to be presumptively prejudicial in Doggett, supra. After examining federal jurisprudence with regard to presumed prejudice, the Fifth Circuit concluded that generally, prejudice is presumed only in cases in which the |inpost-indictment delay lasts at least five years. U.S. v. Serna-Villarreal, 352 F.3d 225, 232 (5th Cir.2003)(citing Doggett, supra; U.S. v. Bergfeld, 280 F.3d 486 (5th Cir.2002); U.S. v. Cardona, 302 F.3d 494 (5th Cir. 2002); U.S. v. Brown, 169 F.3d 344 (6th Cir.1999); U.S. v. Shell, 974 F.2d 1035 (9th Cir.1992)). The court ultimately found that a period of three years and six months of official negligence was too short to weigh heavily in favor of a finding of presumed prejudice. Sema-Villarreal, 352 F.3d at 234-35.
Our own courts have found that official negligence delays of three and one half years and five months did not establish presumed prejudice. See State v. Shorts, 97-0050 (La.App. 4 Cir. 1/07/98), 705 So.2d 1237 (five months); State v. Willis, 94 0056 (La.App. 1 Cir. 3/3/95), 652 So.2d 586, (three and one half years). Moreover, we do not find that the delays attributable to the State were deliberate or designed to hamper the defense. See State v. Scott, 2004-1142, p. 13 (La.App. 4 Cir. 7/27/05), 913 So.2d 843, 851.

CONCLUSION

Although the delay in this case was presumptively prejudicial, upon a careful review of the Barker factors, we find that defendant failed to establish a violation of his right to a speedy trial. Accordingly, the trial court erred in granting defendant’s motion to quash. The matter is reversed and remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.

. At this time, the trial court recalled the alias capias.

. The minute entry for August 16, 2007 was corrected in the September 10, 2007 minute entry, which read: "The minute entry, dated 8/16/07, amended to read, defense continuance.”

. This Court has found delays that were at least partially attributable to Hurricane Katrina as not presumptively prejudicial; however, in most of those cases, the delay was shorter than the twenty-five month delay in the case sub judice. See State v. Stewart 2007-0850 (La.App. 4 Cir. 4/9/08), 983 So.2d 166 (holding that fifteen months between the bill of information and filing of speedy trial motion not presumptively prejudicial, but nonetheless evaluating the remaining Barker factors); State v. Chambers, 2007-0398 (La.App. 4 Cir. 8/22/07), 966 So.2d 98 (finding that delay of over twelve months was not presumptively prejudicial); State v. Scott, 2006-1610 (La.App. 4 Cir. 4/25/07), 958 So.2d 725 (holding that a delay of eighteen months was not presumptively prejudicial, but applying Barker factors); State v. Shanklin, 2006-1151 (La.App. 4 Cir. 2/14/07), 953 So.2d 84 (holding that nine-month delay was not presumptively prejudicial); State v. Dees, 2006-1198 (La.App. 4 Cir. 1/10/07), 950 So.2d 50 (finding that a delay of four months and one week was not presumptively prejudicial); State v. Bias, 2006-1153 (La.App. 4 Cir. 12/20/06), 947 So.2d 797 (six month delay not presumptively prejudicial).
There are cases in this circuit, however, where a delay longer than the one in the instant case has not been considered as presumptively prejudicial. State v. Comadore, 2007-0976 (La.App. 4 Cir. 5/14/08), 984 So.2d 203 (finding that a period of over four years from the first bill of information to the grant of the motion to quash was not presumptively prejudicial where much of delay was caused by non-incarcerated defendant’s filings and repeated failure to appear in court, and where defendant had also not demonstrated any prejudice from the delay); State v. Gibson, 2007-0530 (La.App. 4 Cir. 10/24/07), 971 So.2d 389 (delay of thirty-four months not presumptively prejudicial where only a small portion of the delay was attributable to the State).

. On two occasions, the trial court issued an alias capias for the defendant's arrest when he actually remained in custody.

. The court related that the defendant was attempting to make bond and that Damien Sutton accepted service for him.

. It should also be noted that the loss of lite evidence is directly attributable to the flooding which occurred following Hurricane Katrina shortly after the defendant's arrest and not tire result of any delays in bringing the case to trial.